IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In Re | Chapter 7 |
|---|---|
| MARCOS RODRIGUEZ, | |
| Debtor. | Case No. 04-8549-PHX-SSC |
| | Adv. No. 04-975 |
| NICOLE CLARK (f/k/as Nicole Rodriguez), | MEMORANDUM DECISION |
| Plaintiff, | (Opinion to Post) |
| vs. | |
| MARCOS RODRIGUEZ, | |
| Defendant. | |

## **I. Preliminary Statement**

Nicole Clark (formerly known as "Nicole Rodriguez") commenced this adversary proceeding against the Debtor on August 16, 2004.[1] Both Ms. Clark and the Debtor proceeded without the assistance of counsel in this matter. As a result, the Court held numerous pre-trial proceedings in this matter. The Court initially set the matter for trial on July 28, 2005. Ms. Clark did testify and presented exhibits at that hearing. The Debtor did not have his exhibits

---

**1.** In the initial pleading filed with the Court, she utilized a return address, listing her name as "Nicole Rodriguez," yet in the body of the complaint, she referred to herself as "Nicole Clark." Exhibit 4 reflects that she was restored to her maiden name of "Clark" in May 2004.

1

with him and had not presented them to Ms. Clark. However, Ms. Clark acknowledged that she had not provided her exhibits to the Debtor until just prior to the start of the July 28 trial. The Court determined to continue the trial, allow the parties to exchange exhibits, and set the matter for a further evidentiary hearing on October 14, 2005.

In August 2005, the Debtor notified the Court that he did not dispute that he was to pay his child support on a current basis and that said debt was nondischargeable pursuant to 11 U.S.C. §523(a)(5). Ms. Clark did not allege that there were any child support arrearages then due and owing, so that matter was resolved by the parties. Ms. Clark also sought to have the debt due and owing to "Best Buy," in the amount of $811.26, be deemed nondischargeable pursuant to 11 U.S.C. §523(a)(15) and her attorneys' fee obligation, in the amount of $2,000, be determined nondischargeable pursuant to 11 U.S.C. §523(a)(5).

The parties presented their evidence at the time of the continued trial. Thereafter this Court took the matter under advisement. This Decision shall constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Bank.P. 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C.§§ 1334 and 157. (West 2005).

## II. Discussion

On October 14, 2005, Ms. Rodriguez, the Debtor's stepmother was called by the Debtor as a witness out of order. She testified that she had made several loans to the Debtor. She believed that an aggregate amount of roughly $10,000 was owed to her. She made the first loan to the Debtor in the amount of $3,000, but she did not remember the date, and she did not have any documentation to support the loan. Thereafter she made further loans to the Debtor, over a period of one year, helping him pay his living expenses. Again she did not have the documentation with her. She conceded that all of these loans were made to the Debtor prior to his filing his bankruptcy petition. Ms. Clark presented a copy of the Divorce Decree between her

2

and the Debtor, dated May 11, 2004, which stated that the Debtor would be responsible for the payment of the Best Buy debt and Ms. Clark's attorneys' fees.[2] The specific amount of the Best Buy debt is not set forth in the Decree; however, the Debtor was to pay $2,000 in attorneys' fees and costs incurred by Ms. Clark at the rate of $200 per month, commencing April 1, 2004, until paid in full.[3] Neither party was entitled to an award of spousal maintenance.[4]

Ms. Clark is a high school graduate, and has received vocational training in the area of office management, a diploma program, from Apollo College. She is currently employed and is paid bimonthly by Apollo College.[5] She stated that her pay does vary slightly, but she generally receives gross monthly income in the amount of between $2,205 and $2,214.[6] Given her current gross income and monthly expenses, she has little left over each month for emergency expenses.[7] Her future prospects for employment and compensation remain relatively the same.

Ms. Clark did testify that she entered into a settlement with Best Buy, reducing the amount of the debt to $811.26, which she paid in full.[8] Thus, she seeks reimbursement for the payment of this debt, and payment of her attorneys's fees and costs as set forth in the Decree.

The Debtor did not testify as to his educational background, but stated that he is

---

**2.** Exhibit 4, ¶s 22 and 24.

**3.** Id.

**4.** Id. at ¶11.

**5.** Exhibit 2. She also receives occasional overtime.

**6.** Exhibits 1 and 3. Her 2004 taxable income is substantially less because of deductions taken by her.

**7.** Id.

**8.** Exhibits 5 and 6.

3

currently employed by the United States Postal Service.[9] The Debtor pays his monthly expenses, including his union dues and payments to a retirement fund according to his 2005 monthly budget.[10] Although the Debtor was unclear, it appears that the child support payments to Ms. Clark and the repayment of one of his loans, presumably, a past-due student or educational loan, are being deducted from his paycheck.[11] The Debtor also conceded that he was able to repay the indebtedness due and owing to the Internal Revenue Service (through a set-off procedure of a refund that he was to receive as to his last return) and the Arizona Department of Revenue. Thus, he still needs to repay a loan that he obtained from his Thrift and Savings Plan in the amount of $3,000.[12] The Debtor's budget reflects net pay of $2,528.70, which may fluctuate as a result of overtime.[13] The Debtor has monthly expenses of $2,877.01,[14] but he is repaying his Thrift and Savings Loan apparently though payroll deductions, yet still has net income of $2,528.70.[15] He did not explain the payment to Huntington National Bank in the amount of $580 per month, which is in addition to his monthly rental payment. He also listed a payment to "agricultural insurance," and for "cricket," which he did not explain.[16] In this Court's opinion

---

**9.** Exhibit B.

**10.** Exhibit A. The Debtor's pay-stub also reflects that he is making payments to a Thrift and Savings Account, but that may be the repayment of a loan that he owes.

**11.** Exhibit B.

**12.** Exhibit A also reflects that he owes his stepmother $9,800, but conceded that this was a pre-petition loan. Hence, although he may feel a moral obligation to repay his stepmother, the obligation would have been discharged in his bankruptcy.

**13.** Exhibit B.

**14.** Exhibit A.

**15.** Exhibit B.

**16.** Exhibit A. The Debtor may have meant "automobile insurance" instead of "agricultural insurance," and "cricket" may be his telephone provider. If the payment to cricket is for his telephone, then he is paying an unusually high monthly amount of $121 to Cox for his

4

the Debtor's expenses are overly high and have not been adequately explained.

Although Ms. Clark believed that she might have a claim under 11 U.S.C. §523(a)(5) as to the payment of her attorneys' fees and costs, the Court concludes that based upon the evidence presented, she testified that the claim was set forth in the Decree and had not been paid by the Debtor. Since Ms. Clark was not awarded spousal maintenance and did not reflect which portion of the attorneys' fees related solely to the obtainment of her divorce versus child support or other relief, the Court is only able to conclude that the attorneys' fees are not in the nature of support, but were provided for in the Decree. Thus, the Ms. Clark's claim for both obligations is under 11 U.S.C. §523(a)(15).

For Ms. Clark to succeed on her claims under Section 523(a)(15), she has the prima facie burden of showing that the particular obligation to be excepted from discharge is not in the nature of support and arises from the Divorce Decree or other order of a court of record, incurred in the course of a divorce or separation.[17] Jodoin v. Samayoa (In re Jodoin), 209 B.R. 132, 141 (9th Cir. BAP 1997). Ms. Clark has met her burden of going forward by presenting a

---

cable service.

**17.** 11 U.S.C § 523(a)(15)(West 2005) provides:

A discharge ... does not discharge an individual debtor from any debt--

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless--

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor

5

copy of the Decree and describing the debt which must still be repaid by the Debtor. The Court concludes, based upon the evidence presented, that the reimbursement for the Best Buy obligation is not in the nature of support, yet was to have been repaid by the Debtor pursuant to the Decree. The Court also concludes that given the relative financial parity between the parties, the requirement that the Debtor pay child support, but not spousal maintenance, and the requirement in the Decree that the Debtor repay Ms. Clark's attorneys' fees and costs, the obligation due and owing to her attorney is not in the nature of support, but is provided for in the Decree, with the Debtor to repay the obligation. The court must look to the intent of the parties and the substance of the obligation to determine the nature of a payment. In re Seixas, 239 B.R. 398 (9th Cir. BAP 1999); In re Combs, 101 B.R. 609 (9th Cir. 1989); In re Gibson, 103 B.R. 218, 221 (9th Cir. BAP 1989). In this matter, the obligations are not in the nature of support, but are provided for in the Decree. Based upon the evidence presented, Ms. Clark has met her initial burden of proof.

The burden of persuasion then shifted to the Debtor. Once Ms. Clark met her burden of going forward to reflect that the debt is set forth in the Divorce Decree or other order of a court of record and is not in the nature of support, the Debtor carried the burden of persuasion on the issue of relative hardship. In re Fellner, 256 B.R. 898 (8th Cir. BAP 2001); In re Konick, 236 B.R. 524 (1st Cir. BAP 1999). Although the Debtor's net monthly income is relatively equal to his monthly expenses, he does have the opportunity for overtime. The Debtor also reflected unusually high monthly expenses, such as his food allowance and his Cox Cable expense. The Court concludes that the Debtor's monthly expenses are not reliable. Thus, the Debtor has the ability to repay the obligations to Ms. Clark over time. The Debtor has failed to meet his burden of proof on the first prong of the Section 523 (a)(15) Subsection.

As with the discharge of any obligation, the Debtor always receives a benefit. The Debtor no longer has the legal obligation to repay the debt. However, the second prong of the Section 523 (a)(15) test requires that the Court balance the benefit received by the Debtor

6

against the detrimental consequences to be suffered by Ms. Clark if the obligations were discharged. The Debtor has not met his burden of proof that the benefit that he will obtain outweighs the detrimental consequences to be suffered by Ms. Clark. The Court concludes that Ms. Clark would suffer financial hardship if the obligations were discharged. Clearly the financial hardship that she would suffer outweighs the inconvenience to the Debtor to repay the obligations over time. In balancing the detrimental consequences to Ms. Clark that a discharge of the Best Buy and attorneys' fee obligations would have on her versus the benefit the Debtor would receive if the obligations were discharged, the Court further concludes that the Debtor has not carried his burden of proof on the second prong of the test and must remain responsible for the obligations. Ms. Clark shall be reimbursed for the Best Buy obligation in the lower amount of $811.26, and the Debtor shall repay the obligation in the amount of $2,000 due and owing to Ms. Clark concerning the attorneys' fees and costs that she incurred. Both obligations shall remain nondischargeable pursuant to 11 U.S.C. §523(a)(15).

### **III. Conclusion**

Based upon the evidence presented, Ms. Clark carried her initial burden of going forward, supporting her position that the Best Buy and attorneys' fees and costs obligations were not in the nature of support, but were provided for in the Divorce Decree entered by the State Court in the domestic relations proceedings between Ms. Clark and the Debtor. The Debtor, however, did not carry his burden of persuasion concerning his inability to repay the obligations nor in the balancing of the hardship of the benefit to the Debtor versus the detrimental impact on Ms. Clark if the obligations were discharged. The Best Buy and attorneys' fee obligations are not discharged pursuant to 11 U.S.C. §523(a)(15).

7

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | The Court shall execute a separate order incorporating this Memorandum |
| 6 | Decision. |

DATED this 22nd day of February, 2006.

*/s/ Sarah Sharer Curley*

Honorable Sarah Sharer Curley
U. S. Bankruptcy Judge

8